We are now going to move to the fourth case of the morning. This is Appeal 21-3231 John Halgren et al. v. City of Naperville et al. We're going to begin with argument from the appellant, Mr. Lubin. Mr. Lubin, can you hear me? I can, Judge. Can you hear me? Yes, we can. Thank you very much. We are going to begin then, Mr. Lubin, with argument from you. You have reserved three minutes for rebuttal in this first of the three cases. Yes, Judge. You may continue. Thank you very much. May it please the Court, Counsel, it would be really nice to see all of you in person, but here I am from Skokie. Judges, in the Halgren matter, a lot of the issues in these cases are very similar, and so I guess I've been given a half an hour to talk about all of them. That may not be enough time to talk about all of them, but at least in the Halgren matter, I like to focus on the 11th Amendment argument that had to do with procedural due process. And the reason I want to talk about it is because I think one of the things that really has been common when dealing with COVID mitigation strategies, whether we're talking about lockdowns or these vaccine mandates or a lot of the other things, is executive authority that's being used sometimes in contravention of legislation, and sometimes if you squint your eyes and cock your head to the side, maybe kind of sort of fits within the legislative authority. But any type of gubernatorial action like that that doesn't fall within some type of legislative authority that impacts the liberty interest should be considered a procedural due process violation. And certainly bodily autonomy over medical decisions is a significant liberty interest. Washington v. Harper, Cruzan, people are free from unwanted medical treatment unless there's some kind of interest that countervenes that. And so obviously there is an interest here. I don't think anyone argues otherwise. Mr. Rubin, I understood the procedural due process arguments to be more along the – all these cases are going to blend together, so forgive me a little bit – but that at least with respect to the governor of Illinois, that the governor of Illinois failed to comply with certain requirements of Illinois law, the source of the requirements coming from state law. Is that a misunderstanding of the substance of that procedural due process claim? Yes, it is, Judge, respectfully. My argument has never been – the governor has characterized my argument that way. That has never been my argument. Okay, spell it out. Spell it out for us. And the question which you get, I mean, you understand it, is why don't we have a Pennhurst problem? Absolutely. So, okay, skip over all the procedural stuff and go straight to the – Well, you can describe the claim. It would help to describe the claim because I think I've misunderstood it too. Well, but what the claim is is there is a federal constitutional right to bodily autonomy. Whether or not it's a strict claim, whether or not it's – whatever the deference is under a substantive analysis, there is a right to bodily autonomy. The only way that right can be taken away is if there is some type of process that is given to the plaintiffs. That process – now, the process can be authorized by statute, but there has to be a process. Here there was no process. There was no process whatsoever. The governor snapped his fingers and said that it doesn't matter whether you work for this company, that company, whether you work for the government or for a private contractor, if you fall into this category, you have to get a vaccine or you have to submit to mandatory testing at this point two times a week, which adds a couple hours to these people's work schedule on a weekly basis. It's demeaning, it's embarrassing, and it sets them apart from everybody else on an arbitrary basis. The governor snapped his fingers, and that's what happened. Now, the governor's response to that is – Okay, so what procedures required – so I get what you're saying. What procedures required as a matter of federal constitutional law? At the very least, the legislature would have had to make a law saying, Governor, you can do this. And the legislature never made a law saying, Governor, you can do this. And, in fact, I think the governor – I don't know that I would say the governor admits this, but the governor essentially admits this when responding to the 11th Amendment argument. The governor says, sure, we have the right to do this because under the Illinois Emergency Management Act, under the Illinois Emergency Management Act, we have the right to do this. And I think the way they've categorized my argument is they've said, well, I'm saying that they're misapplying the Illinois Emergency Management Act. I've never said they're misapplying the Illinois Emergency Management Act. What I've said is that there's no authority whatsoever, and that they point to the Illinois Emergency Management Act doesn't change anything. The Illinois Emergency Management Act does not arguably – not in the slightest way – does not arguably apply to this issue. And what I've said, I think, in the reply was perhaps an argument could be made. I don't like the argument, but perhaps an argument could be made, and for what it's worth, the district court approved of this argument. So clearly an argument could be made that under the Illinois Emergency Management Act, there's authority for lockdowns because it mentions ingress and egress. But ingress and egress doesn't mean the governor can do anything about any subject as long as it involves movement. And in effect, that's what the governor has argued here. Now, that's okay. Okay. But you have to acknowledge, don't you? You may say, yes, but that's what I'm asking you to do. It's a big and broad holding for a federal court in the name of the Procedural Due Process Clause to instruct state government on how its branches need to interact with one another in passing a health measure in a global pandemic. That's a big holding. A couple of things about that, Judge. First of all, I don't think it's a big thing for this court to say to a governor, two years after the pandemic began, at some point during these two years, some procedure could have been come up. You could have gotten the legislature to pass a law giving you the authority you claim you have here. No, no, no. But we're not going to write a comment. We're going to write a legal opinion. We're not going to comment. So what you're asking us to hold, correct me if I'm wrong, is that the Due Process Clause of the national constitution was violated because of the way the governor of Illinois, without legislative support, went about passing vaccine mandates and other health measures during the pandemic. Yes, Judge. I'm asking you to say that. I'm asking you to say that. Okay, that's the claim. I get it. What's your authority for the procedural aspect of that? Putting aside the liberty interest, what's your authority that that procedure is mandated under the federal constitution? You mean that the legislature has to say something as opposed to giving someone a trial? I mean that the governor has to go to the legislature and state and get approval before entering an executive order like this, which is what you just said was your claim. Yes. No, I think you have my claim correctly. And my question is, what's the legal support that that is the procedure that is due under the federal constitution? Some procedure is, Judge, all the cases I've cited. I haven't read a case that you've cited, which is why I'm asking you, that says that in order to comply with federal procedural rights, the governor has to have approval from the state legislature to enter an executive order of this type. Judge, I can only assume the reason there's not a case saying something so obvious as that is that this situation has not come up before. We've not had a situation where a governor snaps his fingers and changes a person's rights over his own bodily autonomy so summarily without any authority from the legislature to do so. What's the closest U.S. Supreme Court, I know there's no, you're right about that, Mr. Lubin, there's no case on point. What's the closest U.S. Supreme Court precedent that comes to mind as I ask my questions and Judge St. Eve asks hers? That's a phenomenal question. May I answer it on rebuttal? No problem. Thank you. We'll now move to argument from the appellee. We'll start with Mr., is it Beichat? Bezat. Bezat. Mr. Bezat for eight minutes. May it please the court. My name is Frank Bezat and I represent Governor Pritzker. The governor issued an executive order in September 2021 in response to the increasing spread and severity of COVID-19 as the Delta variant took hold. The executive order, like the city of Naperville policy that is also being challenged in this case, requires healthcare workers to either receive a COVID-19 vaccine or undergo weekly testing. This court should affirm the denial of plan's request for a preliminary injunction because they have failed to make a strong showing of a likelihood of success on the merits of any of their claims or that any of the other injunction factors have been satisfied. On the merits... Before you go too far on the merits, can I just confirm, is this policy, is this executive order still in place? Yes, this is one that's been reissued most recently. In exactly the same manner that it was first issued? Yes, I believe so. The most recent executive order said EO 2021-22 is reissued. Thank you. And on the merits, both the substantive due process and equal protection claims trigger rational basis review and the challenge mandate satisfy that level of review. And plaintiffs cannot succeed on their federal procedural due process claim because the claim entirely relies on an allegation that the governor violated his authority under state law. And I'll start with the procedural due process claim because that's what has been discussed here. Whether the plaintiff's claim is characterized as a state law claim for violation of state law or as a federal due process claim that is based on a violation of state law, in neither case have plaintiffs stated a claim. If it's a state law claim, then it's barred by the 11th Amendment and needs to be brought in state court. And to the extent that plaintiffs try and characterize the alleged violation of state law as a federal due process claim, that just doesn't state a federal due process claim because this court has said, in many instances, that a noncompliance with state law does not by itself violate federal law. But we heard, okay, so let me try to... I don't know if I'm going to help or hurt things here, all right? But Mr. Lubin says, no, no, no, that's misunderstanding my claim. And you heard him as well as I did. Okay, so I think the challenge with his line of argument is that we know, for example, that you can't bring a Fourth Amendment claim, say in a 1983 action. You can't bring a Fourth Amendment claim in the name of substantive due process. If what you're effectively challenging is an unreasonable search, you know, a search, you can't then say, well, that also violates my substantive due process, right? There's case law that says, no, no, no, the kind of specific provision of the U.S. Constitution that speaks to the liberty interest is what governs the claim. That's what's running through... Mr. Lubin, you're hearing me too. You can respond to this when you come back up. But that's what's running through my mind, that you can't... If somebody blatantly violates my First Amendment free speech rights, I think it's analyzed as a free speech claim. I don't think you'd say, well, I didn't have notice, I didn't have an opportunity to be heard that way. I don't think all of a sudden there's like a flip side due process claim. Is that the way you think about it, or am I wrong? Yes, I agree, Your Honor. In order for there to be a procedural due process claim, there needs to be a violation of one of the rights that are protected by procedural due process. But even if there is, is there a procedural due process claim? No, Your Honor. So you violate my First Amendment rights. Let's just stipulate to it. Right. Does that ripen a procedural due process claim for me? No, Your Honor. It would simply be a First Amendment claim. And I think in other circumstances... I just sued you in 1983. Right. Correct, Your Honor. And to the extent that plaintiffs argue that they aren't really complaining about a violation of state law, or that there is no state law authorizing what the governor did, the Illinois Emergency Act clearly authorizes the governor to take various steps in a public disaster, and among those are to control the movement of persons within the disaster area, but also the occupancy of premises within the area. And the executive order is very clearly tethered to the occupancy of premises in the area because a health care worker is defined as somebody who... So your argument there is you, the governor, didn't have to return to the legislature to say, do you mean what you said in the Emergency Act? Correct. The legislature already granted that authority. He acted pursuant to it. Correct. He acted pursuant to it. Yes, the legislature already granted that authority, and the governor acted pursuant to that authority. And if the legislature believed that the governor had exceeded his authority, the legislature could have amended the Illinois Emergency Act as it did with the Health Care Right of Conscience Act in response to changing circumstances during the pandemic, but it did not. Even if it hadn't given the authority, are you aware of anything that says, as a matter of federal law, that the governor has to go to the legislature first? No, Your Honor. And again, if the governor had, in a particular case, overstepped his authority, that's something that state courts are very capable of resolving. And there have been a number of cases brought in state court challenging various actions that the governor has taken pursuant to his authority under the Illinois Emergency Act. And so that's a forum that has been available to plaintiffs and would be the appropriate venue for a claim of this nature. So what should the recourse of the plaintiffs have been there if they believe the actions of the governor under the Illinois Emergency Act were ultra-virous? Is that a mandamus action in the Illinois Supreme Court? What vehicle should they have used? Well, I mean, you could bring a mandamus action. You could bring, I mean, I guess they could just bring an action to invalidate the order. I mean, there's various procedural vehicles that the litigants have taken in state court. So those options were certainly available. And on the ultra-virous issue, I just want to point out that that is a very rarely invoked exception that has a very limited scope and only applies when there is a state official act with no authority whatsoever. Here, the governor was clearly acting, at least pursuant to his authority under the Illinois Emergency Act, even if there was a disagreement about whether he went too far or not, it's not as if he acted without any authority by law at all. And as I'm running out of time, I would just like to pivot to substantive due process just very quickly if I can. On substantive due process, Jacobson and Klassen clearly established that the constitutional standard is rational basis review. Plaintiff's argument that Jacobson... I'm sorry, you said Jacobson established? Jacobson and Klassen. Or what was that? Jacobson predates Caroline Products, right? Yes, Your Honor. So when you talk about rational basis review... Go ahead. I guess I can be more specific. This court recognized in Klassen that what Jacobson applied in effect was rational basis review, and that's consistent with Justice Gorsuch's concurrence in Roman Catholic Diocese, that even though it predated those levels of scrutiny, that's in effect what was going on. And in terms of applying the rational basis review standard, at the most basic level, there's the recent Supreme Court decision in Biden which rejected a claim that an even more stringent federal mandate was arbitrary and capricious, and arbitrary and capricious is equivalent to the rational basis standard. And then in addition, there are all the rational bases that the governor presented below with supporting evidence and those experts' citation of authority. But as I'm out of time, then I'll just rest there and ask that this court affirm unless you have any further questions. No, thank you. We'll hear from you in the next two cases as well. Thank you. Thank you, Mr. Bizat. We're now going to hear from Mr. Romashko for two minutes, also on behalf of the appellee. May it please the court. My name is Robert Romashko, and I represent Edward Elmhurst Healthcare. Your Honors, Edward Elmhurst agrees with the governor's arguments with respect to the merits and to the extent that the court affirms on that basis, the affirmance would apply to Edward Elmhurst as well and there would be no injunction. But Edward Elmhurst has some separate reasons that it cannot be enjoined here. They were subject to the directive, correct? Your client? Edward Elmhurst would have been subject to the directive, but on the facts of this case, that's not really the issue. Were they part of the enforcement of the directive in any way? They were not, and that is the issue, Your Honor. Edward Elmhurst, so Edward Elmhurst, Edward Hospital in Naperville is a resource hospital, and the EMS medical director supervises pre-hospital care by emergency medical providers. That's the only relationship they have to the, I shouldn't say only, but that's the relevant relationship as alleged to the Naperville Fire Department, but that has nothing to do, there's no authority under the Illinois Emergency Medical Services Act and there is no fact in the record  to issue any order or directive to the Naperville Fire Department. There is an allegation in the complaint that that happened, but we're past the complaint. At the preliminary injunction stage, the parties put up evidence, and the evidence established that that wasn't what happened. In fact, confronted with that evidence, the plaintiff's counsel responded by pivoting to a different argument that, well, maybe Edward Elmhurst could have used their authority under the Illinois law to do something similar if this action was enjoined. As your honors know, courts don't enjoin based on hypothetical policies that no one has implemented or proposed. Unless there are any questions from the court, we have nothing further, your honor. Thank you, Mr. Romashko. Mr. Lubin, we're going to now go back to you for rebuttal in the Halgren case. I think you're on mute, Mr. Lubin. Thank you. Thank you very much. Thank you, Judge. To answer Judge Scudder's question, I think the case that says it best is Matthews v. Eldridge. Procedural due process imposes constraints on government decisions which deprive individuals of liberty or property interests within the meaning of due process clause of the Fifth or Fourteenth Amendment. And I do recognize that typically the procedural due process analysis is, was the trial good enough? Was the hearing good enough? Were you given proper notice and then given a hearing? But it should go nearly without saying that notice and a hearing is necessary before a person's liberty interests, including the interest to bodily autonomy, medical decisions, or specifically dealt with in Cruz-Anne v. Director. You know, and that was a procedural due process question in that one. I think it should go without saying that if some hearing is necessary and we can sit and talk about whether the quality of the hearing was good enough, that no hearing whatsoever. And when I say no hearing whatsoever, not even the legislature weighed in. It goes without saying that there has been no hearing, no notice, and no satisfaction of the requirements of procedural due process. A liberty interest was taken away from these people because the governor said so, and he did so absent any authority in Illinois statute. At the very least, he has to have that, and he doesn't. Judge, just to answer very, very briefly the Edward Elmshurst argument, and I think I did say it in the briefs, but it was characterized as me pivoting. Judge, I have always said if they will put on the record that they will not require any of the Naperville firefighters to vaccinate and they won't take any action, I will let them out tomorrow. They've never told me they won't take any action. I've always said they'll uphold the statute. Not the statute, the governor's decree. So they're a public party as far as this issue is concerned. Thank you, Mr. Lubin, and thank you to counsel. That will complete our argument on Appeal 21-3231.